IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| GEORGE R. BEACHEM II, #150107 | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:20cv859 |
| | § | |
| LT. STEPHEN SMART, ET AL. | § | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Pending before the court is Defendant Lt. Stephen Smart's ("Lt. Smart") First Amended Motion to Dismiss (the "Motion to Dismiss") (Dkt. #45). *Pro se* Plaintiff George R. Beachem II ("Plaintiff") filed a response (Dkt. #49), and Lt. Smart filed a reply (Dkt. #50). For the reasons that follow, the court recommends the Motion to Dismiss (Dkt. #45) be **GRANTED** and Plaintiff's lawsuit be **DISMISSED WITH PREJUDICE**.

I. BACKGROUND

Plaintiff, proceeding *pro se* and *in forma pauperis*, commenced this civil rights lawsuit on November 4, 2020, against Defendants Lt. Smart and Collin County Detention Facility. (Dkt. #1). On September 2, 2021, Plaintiff amended his complaint. (Dkt. #23). On August 22, 2022, the court dismissed Plaintiff's claim against the Collin County Detention Facility and granted Plaintiff leave to amend his claim against Lt. Smart. (Dkt. #34). After granting Plaintiff extensions in which to file an amended complaint (Dkt. ##40, 42), Plaintiff filed the operative Amended Complaint against Lt. Smart in August 2023. (Dkt. #44). Plaintiff alleges Lt. Smart was "responsible for the food preparations at Collin County Detention Facility in 2019" and "failed to inspect food equipment that caused harm to multiple inmates at Collin County Detention Fac." (Dkt. #44, p. 3). Specifically, Plaintiff alleges:

> September 29, 2019 I choked on a metal object in my food from Collin County Detention Center food service can opener that harmed "several" inmates during the month of September. I was transported to Baylor Hospital with life threatening injury upon finding by Officer Cook that Lt. Smart was aware of the failing can opener injuring inmates with metal objects and continuing its use. I still have tissue damage, trouble swallowing, and possible long term damage.

(Dkt. #44, p. 4). As relief, Plaintiff seeks compensation for "pain and injury" in the amount of $100,000.00 (Dkt. #44, p. 4).

On August 24, 2023, Lt. Smart moved to dismiss Plaintiff's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing (1) that Plaintiff alleges a negligence case at best and fails to state a viable 42 U.S.C. § 1983 claim; (2) that no plausible allegations exist as to personal involvement by Lt. Smart; and (3) that Plaintiff fails to plead any plausible claims that would defeat Lt. Smart's entitlement to qualified immunity. (Dkt. #45).

Plaintiff filed a response and included additional factual allegations. (Dkt. #49). Plaintiff alleges that, approximately two days before he was injured by the metal object in his food, another inmate "found a screw in his green beans during dinner and the inmate gave the screw to the pod officer who contacted kitchen and the kitchen officer immediately notified Lt. Smart," "which shows Lt. Smart was aware of the metal can opener failing and leaving metal pieces in inmates['] food yet Lt. Smart still allowed the kitchen instrument to be used in preparing food." (Dkt. #49, p. 1). Plaintiff also alleges that after his injury, another inmate "broke his molar tooth after being served pineapples with metal within them." (Dkt. #49, p. 1). Additionally, Plaintiff states:

> Upon Lt. Smart being notified the first time [there was a metal object in an inmate's food] and notifying the kitchen to discontinue the use of the failing can opener, Lt. Smart allowed the can opener to continue being used to prepare food knowingly it has already caused harm to inmates.

(Dkt. #49, p. 3). Lt. Smart filed a reply reurging his arguments in the Motion to Dismiss. (Dkt. #50).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move for dismissal of an action if the plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Because dismissals under Rule 12(b)(6) are disfavored, the court must accept all well-pleaded facts in the plaintiff's complaint as true, "even if doubtful or suspect," and view them in the light most favorable to the plaintiff. *Peña Arita v. United States*, 470 F. Supp. 3d 663, 680 (S.D. Tex. 2020). However, the court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).

A claim will survive an attack under Rule 12(b)(6) if, considering all well-pleaded facts, the complaint states a plausible claim for relief, rather than "the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The well-pleaded facts must allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* When considering a motion to dismiss for failure to state a claim, the court's review is limited to the complaint, any document attached to the complaint, any document attached to the motion to dismiss that is central to the claim and referenced by the complaint, and any facts subject to judicial notice. *See Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019); *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)).

The court is also mindful it "must construe the pleadings of *pro se* litigants liberally to prevent the loss of rights due to inartful expression." *Perez v. Dall. Cnty. Jail*, No. 3:20-cv-01761,

3

2022 WL 1215781, at *2 (N.D. Tex. Mar. 31, 2022) (internal citations omitted); *see also Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006). "But 'liberal construction does not require that the Court . . . create causes of action where there are none.'" *Rolan v. LaSalle Sw. Corr.*, No. 3:20-cv-2842, 2021 WL 5568168, at *3 (N.D. Tex. Nov. 1, 2021) (quoting *Smith v. CVS Caremark Corp.*, No. 3:12-cv-2465, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013)).

### III.  ANALYSIS

#### A.  Failure to State a Claim

The Eighth Amendment's prohibition against cruel and unusual punishment includes an inmate's right to be free from conditions of confinement that impose an excessive risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).[1] In order to establish that this right has been violated, the inmate must satisfy a two-part test. The first part of the test is objective and requires the inmate to show he is incarcerated under conditions posing a substantial risk of serious harm so grave it violates contemporary standards of decency to expose anyone unwillingly to such a risk. *Id.* at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The second prong of the test is subjective and requires the inmate to show the prison official "knew of and disregarded an excessive risk to inmate health or safety"; the official must both be aware of

---

[1] The parties and earlier Report and Recommendation (Dkt. #33) analyzed Plaintiff's claim under the Eighth Amendment. It is unclear, however, whether at the time of the alleged incident Plaintiff was a pretrial detainee—in which the Fourteenth Amendment would apply—or a convicted inmate—in which the Eighth Amendment would apply. In any event, the same analysis applies regardless of whether Plaintiff was a pretrial detainee or a convicted inmate. A pretrial detainee alleging episodic acts or omissions and a condition of confinement claim under the Fourteenth Amendment must satisfy tests for both objective and subjective components of that claim; the same tests as a convicted inmate alleging an Eighth Amendment violation. *Desroche v. Strain*, 507 F. Supp. 2d 571, 579 (E.D. La. 2007) (citing *Farmer*, 511 U.S. at 847); *Davis v. Scott*, 157 F.3d 1003, 1006 (5th Cir. 1998) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)); *see Hare v. City of Corinth*, 74 F.3d 633, 643 (5th Cir. 1996) ("Finding no constitutionally significant distinction between the rights of pretrial detainees and convicted inmates to basic human rights . . . we conclude that a state jail official's constitutional liability to pretrial detainees for episodic acts or omissions should be measured by a standard of subjective deliberate indifference as enunciated by the Supreme Court in *Farmer*.").

facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Id.*

To satisfy constitutional requirements in the area of food service, a state must furnish its prison inmates with reasonably adequate food. *See George v. King*, 837 F.2d 705, 706-07 (5th Cir. 1988). In determining whether a deprivation of reasonably adequate food falls below this threshold, the court looks to the amount and duration of the deprivation. *Talib v. Gilley*, 138 F.3d 211, 214 n.3 (5th Cir. 1998). Relevantly, under prevailing case law in the Fifth Circuit, "[a] single incident of food poisoning or finding a foreign object in food does not constitute a violation of the constitutional rights of the prisoner affected." *Green v. Atkinson*, 623 F.3d 278, 281 (5th Cir. 2010). "Evidence of frequent or regular injurious incidents of foreign objects in food, on the other hand, raises what otherwise might be merely isolated negligent behavior to the level of a constitutional violation." *Id.*

Plaintiff's allegations in his Amended Complaint (Dkt. #44) fail to plausibly state a claim for the deprivation of his constitutional rights. A single incident of Plaintiff finding a foreign object in his food is plainly insufficient under *Green*. Furthermore, although Plaintiff alleges that "several" other inmates were also harmed by the failing can opener "during the month of September," it is unclear whether Plaintiff is pointing to a single, isolated incident with multiple inmates affected or multiple incidents. (Dkt. #44, p. 4). Plaintiff's response (Dkt. #49) contains additional factual allegations regarding the other inmates, which are also insufficient to state a cognizable constitutional claim even if the court were to consider these allegations. According to Plaintiff, two other inmates found metal objects in their food in September 2019: one incident occurred about two days before Plaintiff was injured, and one incident occurred after Plaintiff was injured. (Dkt. #49 p. 1). In sum, Plaintiff has alleged instances of metal objects in the prison food

5

on three occasions in September 2019, and more specifically, between September 27-30, 2019. Evidence of only three incidents of metal objects in prison food over approximately four days does not sufficiently show that the occurrence was more than occasional or isolated. As such, even taking into consideration the information in Plaintiff's response, Plaintiff's claim against Lt. Smart fails to state a constitutional violation. *See George*, 837 F.2d at 707 ("[A] single incident of unintended food poisoning, whether suffered by one or many prisoners at an institution, does not constitute a violation of the constitutional rights of the affected prisoners."); *see also Roberts v. Williams*, 456 F.2d 819, 827 (5th Cir. 1971) (finding "the sustained maintenance, over a period of time of a needlessly hazardous condition" could present a constitutional violation, and concluding, "careless preparation of a single meal, producing food poisoning in prisoners, was not cruel"); *Hampton v. Blanco*, 299 F. App'x 460, 461 (5th Cir. 2008) (per curiam) (holding an inmate's allegation that he was deprived of "a single uncontaminated meal is insufficient to set forth an Eighth Amendment violation"); *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985) ("The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation."); *Rodriguez v. Bryson*, No. 517CV00010MTTCHW, 2019 WL 13193452, at *20 (M.D. Ga. July 10, 2019), *report and recommendation adopted as modified*, No. 5:17-CV-10 (MTT), 2019 WL 13193451 (M.D. Ga. Sept. 6, 2019), *aff'd sub nom. Rodriguez v. Burnside*, 38 F.4th 1324 (11th Cir. 2022) ("Based on the evidence of record, the incidents of foreign objects in the prison food, let alone injurious ones, were few and far between."); *Wassil v. Casto*, No. CIV.A. 3:13-06020, 2014 WL 988479, at *11 (S.D.W. Va. Mar. 12, 2014) ("Occasional short-lived problems with food service and isolated instances of spoiled food or foreign objects in the food do not state cognizable claims under the Eighth Amendment.") (internal quotation omitted).

Plaintiff's allegations also do not establish Lt. Smart's personal involvement in the incident. Plaintiff premises Lt. Smart's liability on his supervisory role, asserting that Lt. Smart was "responsible for safety and regulations of the food preparations at Collin County Detention Facility in 2019" and was aware of metal appearing in food due to a failing can opener and "continuing its use." (Dkt. #44, p. 3). Individual liability under § 1983 may not be based on a supervisor's vicarious liability for the acts or omissions of subordinates. *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 534 (5th Cir. 1997). Supervisory officials may be liable only if their own action or inaction, performed with a certain degree of gross negligence or deliberate indifference, proximately causes a constitutional violation. *Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 459 (5th Cir. 2001). Plaintiff alleges that the inmate who found a screw in his food two days before Plaintiff's injury contacted the "pod officer, who contacted kitchen and the kitchen officer immediately notified Lt. Smart." (Dkt. #49, P. 1). Even assuming Lt. Smart was aware of the first incident in which the failing can opener resulted in metal in an inmate's food, Plaintiff's allegations do not indicate that Lt. Smart was personally involved in the incident with Plaintiff, knowingly or intentionally harmed Plaintiff, or was deliberately indifferent to a substantial risk of serious harm. There is no allegation that Lt. Smart affirmatively directed kitchen staff to continue using a can opener that he knew was failing. *See Turner v. Lieutenant Driver*, 848 F.3d 678, 696 (5th Cir. 2017) ("Personal involvement of supervising personnel generally includes giving a 'command, signal, or any other form of direction' to the subordinate that prompted the constitutional violation."). To the contrary, in the response, Plaintiff asserts that Lt. Smart notified kitchen staff to stop using the failing can opener after the first incident. (Dkt. #49, p. 3). This reflects Lt. Smart responded to the risk and did not act with deliberate indifference. That the kitchen staff may have continued to use the failing can opener does not impute § 1983 liability

onto Lt. Smart solely on the basis of his position as a supervisor. Additionally, Plaintiff promptly received medical treatment after the incident, further demonstrating that Lt. Smart did not act with deliberate indifference. Thus, Plaintiff's allegations sound in negligence, at best, and negligence is not actionable under § 1983. *See Wilson*, 501 U.S. at 305; *Myles v. Prator*, No. CV 22-5200-P, 2023 WL 4665054, at *2 (W.D. La. Mar. 10, 2023), *report and recommendation adopted*, No. CV 22-5200-P, 2023 WL 4636895 (W.D. La. July 19, 2023).

Finally, to the extent Plaintiff alleges that Lt. Smart failed to follow jail policies and procedures for kitchen operations, the mere failure of prison officials to follow prison policies or rules, alone, does not amount to a constitutional violation. *Jackson v Cain*, 864 F.2d 1235, 1251-52 (5th Cir. 1989) (noting that failure to follow prison rules or regulations, alone, does not establish a constitutional violation). As such, Plaintiff's claim against Lt. Smart is subject to dismissal for failure to state a claim.

## B. <u>Leave to Amend</u>

Generally, a *pro se* plaintiff should be allowed to amend his complaint before it is dismissed. *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009) (per curiam) (citing *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (per curiam)). "Although leave to amend under Rule 15(a) is to be freely given, that generous standard is tempered by the necessary power of a district court to manage a case." *Strickland v. Bank of N.Y. Mellon*, 838 F. App'x 815, 821 (5th Cir. 2020) (citing *Schiller v. Physicians Res. Grp., Inc.*, 342 F.3d 563, 566 (5th Cir. 2003)). A district court may consider the following factors in deciding whether to grant leave to amend: undue delay, bad faith or dilatory motive on the plaintiff's part, repeated failures to cure deficiencies by previous amendments allowed, undue prejudice to the opposing party, and futility of the amendment. *Id.*

Here, Plaintiff has already amended his complaint and has provided no indication he would be able to cure the pleading deficiencies identified herein if he were allowed to amend again. Under these circumstances, the court finds granting Plaintiff leave to amend would be futile, would unnecessarily delay these proceedings, and would prejudice Lt. Smart, who has already filed motions to dismiss and would likely file another motion to dismiss if an amended complaint were filed.

## C. Strike under 28 U.S.C. § 1915(g)

Under the PLRA, an inmate may not file any lawsuit or appeal *in forma pauperis* if he has three or more lawsuits or appeals previously dismissed as "frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). The statutory provision was designed to stop abusive litigious practices employed by inmates.

Because the court is recommending dismissal of Plaintiff's claim for failing to state a claim upon which relief may be granted, it is further recommended Plaintiff be advised this dismissal counts as a strike pursuant to 28 U.S.C. § 1915, and should he accumulate three strikes, he may be denied *in forma pauperis* status and be required to pay the full filing fee when filing additional civil actions or appeals unless he demonstrates he is in imminent danger of serious physical injury.

## IV. RECOMMENDATION

For the reasons set forth above, the court recommends the Motion to Dismiss (Dkt. #45) be **GRANTED** and Plaintiff's claims against Lt. Smart be **DISMISSED WITH PREJUDICE**. The Court further recommends this dismissal be counted as a strike pursuant to 28 U.S.C. § 1915.

Within fourteen days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge.

28 U.S.C. § 636(b)(1)(C). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*), *superceded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 22nd day of January, 2024.**

_____
AILEEN GOLDMAN DURRETT
UNITED STATES MAGISTRATE JUDGE